UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Eric Blakley

    v.                     Civil No. 18-cv-702-LM
                           Opinion No. 2019 DNH 165
Andrew M. Saul, Commissioner
Social Security Administration[1]


O R D E R

Eric Blakley seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental security income.  In moving to reverse the decision, Blakley contends that the Administrative Law Judge ("ALJ") erred in making the residual functional capacity assessment and in failing to consider a prior decision by a different ALJ.  The Commissioner moves to affirm.


**STANDARD OF REVIEW**

The court's review of the final decision of the Acting Commissioner in a social security case "is limited to

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as the Acting Commissioner of the Social Security Administration.  Andrew M. Saul has since been appointed Commissioner and has been automatically substituted. See Fed. R. Civ. P. 25(d).

determining whether the [Administrative Law Judge ("ALJ")] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings if they are supported by substantial evidence even if the record could arguably support a different result. § 405(g); Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991). Substantial evidence is "more than a scintilla of evidence" but less than a preponderance. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520 & 416.920.[2] The claimant bears the burden through the first four steps of proving that his impairments preclude him from working. Purdy, 887 F.3d at 9. The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether he has a severe impairment; and (3)

_____

[2] Because the regulations implementing the applicable standards for disability under Title II and Title XVI are the same for purposes of this case, the court will cite the Title II regulations in Part 404. See Sullivan v. Zebley, 493 U.S. 521, 525 n.3 (1990).

determining whether the impairment meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite his limitations caused by impairments, id. § 404.1545(a)(1), and his past relevant work, id. § 404.1520(a)(4)(iv).  If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled.  See id. § 404.1520(a)(4)(iv).  If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment.  See id. § 404.1520(a)(4)(v).

**BACKGROUND**

A detailed factual background can be found in Blakley's statement of facts (doc. no. 10) and the Commissioner's statement of facts (doc. no. 12).  The court provides a brief summary of the case here.

I.    Procedural Background

On December 17, 2012, Blakley applied for disability insurance benefits and supplemental security income.  After

Blakley's applications were denied, he requested a hearing before an ALJ. On April 24, 2013, the ALJ held a hearing, after which she denied Blakley's claim for benefits in a written decision dated October 9, 2014. In that decision, the ALJ found that Blakley had the residual functional capacity to do work at the sedentary level with certain restrictions and that he was not disabled. The Appeals Council denied Blakley's request for review, making the ALJ's decision the Commissioner's final decision. Blakley brought an action in federal court challenging that decision. See Blakley v. U.S. Soc. Sec. Admin., Acting Comm'r, 15-cv-397-LM (D.N.H. Sep. 29, 2015).

On April 6, 2016, upon an assented-to motion by the Commissioner, the district court remanded the federal court action to the Commissioner for further administrative proceedings. The Appeals Council subsequently vacated the Commissioner's decision and remanded the case to an ALJ to: (1) further evaluate Blakley's mental impairments; (2) further consider the medical source opinions of James Samson, an occupational therapist, Dr. Jonathan Sixon, Blakley's treating physician, and Dr. Jonathan Jaffe, a state agency consultant; (3) reassess Blakley's residual functional capacity and obtain testimony from a vocational expert to support the ALJ's Step Five finding. See Admin. Rec. at 692-94.

On April 25, 2017, a different ALJ held a second hearing. Blakley, who was represented by an attorney, and his wife, Jennifer Blakley, appeared at the hearing and testified. Dr. Robert Thompson, a medical expert, testified by phone. Elizabeth Laflamme, a vocational expert, was available to testify by phone, but the ALJ did not seek testimony from her.

II.  ALJ's Decision

On May 24, 2017, the ALJ issued an unfavorable decision. She found that Blakley had a severe impairment due to chronic pain syndrome but found that he did not have a severe impairment due to degenerative disc disease or due to any mental impairment.

Unlike in the first decision, which found that Blakley was capable of sedentary work, the ALJ found that Blakley had the residual functional capacity to do light work with certain restrictions.  The restrictions included that Blakley could never climb ladders, ropes, or scaffolds and could do other postural activities only occasionally.

In assessing Blakley's RFC, the ALJ considered Blakley's testimony as to his activities of daily living and symptoms, as well as his medical records and the medical opinion evidence.

As directed by the Appeals Council, the ALJ reassessed the opinion evidence of Blakley's treating physician, Dr. Sixon, his

occupational therapist, James Samson, and the state agency consultant, Dr. Jaffe. As discussed further _infra_, the ALJ gave Dr. Sixon's and Samson's opinions little weight and gave Dr. Jaffe's opinion great weight. In addition, in assessing Blakley's RFC, the ALJ gave significant weight to the opinion of the impartial medical expert, Dr. Thompson.

The ALJ then used the Medical-Vocational Guidelines to find at Step Five that Blakley was not disabled, concluding that the additional postural limitations on Blakley's ability to do light work had little or no effect on the base of unskilled work. The Appeals Council denied Blakley's request for review, making the ALJ's decision the Commissioner's final decision. This action followed.

**DISCUSSION**

Blakley moves to reverse the Commissioner's decision on the ground that the ALJ erred in assessing his residual functional capacity. Specifically, Blakley contends that the ALJ improperly weighed the medical opinion evidence and erred in failing to consider the residual functional capacity assessment done by the prior ALJ before the case was remanded to the Appeals Council.

I.  <u>Medical Opinions</u>

Blakley first contends that the ALJ erred in her evaluation of several medical opinions in the record.  Specifically, he argues that the ALJ erroneously gave little weight to Dr. Sixon's and Samson's opinions.  He also contends that the ALJ erred in giving great weight to Dr. Jaffe's opinion.

An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  § 404.1527(a)(1).  Medical opinions are evaluated based upon the nature of the medical source's relationship with the claimant, the extent to which the source provides evidence to support the opinion, the extent the opinion is consistent with other evidence in the record, the specialization of the medical source, and other factors including the understanding the source has of the social security system.  § 404.1527(c); <u>see also</u> <u>Johnson v. Berryhill</u>, <u>No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017)</u>.

A.  Dr. Sixon

In general, an ALJ will give more weight to the opinion of a treating source and may give that opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  § 404.1527(c)(2).  The ALJ is required to give "good reasons" in the disability decision for the weight given to treating source opinions.  Id.  "Those reasons must offer a rationale that could be accepted by a reasonable mind."  Dimambro v. US Soc. Sec. Admin., Acting Comm'r, No. 16-cv-486-PB, 2018 WL 301090, at *10 (D.N.H. Jan. 5, 2018).  If the ALJ satisfies that standard, the court will uphold the decision to discount a treating source's opinion.  Id.

Dr. Sixon began treating Blakley as his primary care physician in January 2012 and continued to do so regularly through 2016.  Dr. Sixon provided two opinions in the case: (1) a medical source statement dated December 31, 2013 ("the 2013 opinion") and (2) a medical source statement dated April 7, 2014 ("the 2014 opinion").

The ALJ addressed both the 2013 opinion and the 2014 opinion in her decision.  She noted that in the 2013 opinion, Dr. Sixon found that Blakley was unable to do work at even the sedentary exertional level, required a cane to walk, and would

have to spend more than half of every day lying down.  In the 2014 opinion, Dr. Sixon stated that Blakley was not capable of working a 40-hour workweek, and that Blakley would need to miss more than four days per month and take a take a 15-20-minute break each hour where he could lie down.

The ALJ acknowledged that Dr. Sixon was Blakley's primary treating physician with a lengthy treatment history.  The ALJ reviewed and discussed Dr. Sixon's treatment notes starting in May 2012, when Dr. Sixon noted that Blakley was quitting his job so that he could work on building his new house.  The ALJ noted the contrast between the extent of pain and limitations Blakley expressed and the examination, test, and imaging results over the course of his treatment.

The ALJ also noted that during the spring of 2013 Blakley reported to Dr. Sixon that he could not walk more than a few feet without a cane, although Dr. Sixon had not prescribed a cane.  At the same time, however, Blakley reported to Dr. Sixon that he also sought treatment for his finger that he injured while cutting sheetrock, which suggested that Blakley was engaged in physical activity inconsistent with his reported significant limitations.  The ALJ further noted several times when Blakley admitted he had taken more Percocet and Oxycodone than had been prescribed.  In addition, in April 2014, Dr. Sixon wrote that Blakley's "pain syndrome seems to far outweigh his

findings on exam," indicating that Blakley's reported symptoms were not related to his degenerative disc disease. Admin. Rec. at 1043. Later examination notes showed increased functioning and the need for detox from his narcotic medications.

Before addressing Dr. Sixon's opinions, the ALJ explained that she gave significant weight to the opinions provided by Dr. Thompson who found that there was limited orthopedic evidence to support the claimed limitations, that chronic pain syndrome was Blakley's primary issue, and that there was no evidence to support sensory loss, motor weakness, atrophy, or abnormal reflexes. The ALJ also noted that Dr. Thompson found that Blakley had poor endurance and side effects from medications which affected his functional capacity.[3]

The ALJ explained that she gave Dr. Sixon's opinions little weight because of the lack of objective evidence in the record to support the limitations Dr. Sixon found, because the opinions were internally inconsistent. She further noted that the opinions did not cite supporting evidence from the record.

Blakley challenges that assessment on the grounds that the ALJ did not provide sufficiently specific reasons and erred in finding Dr. Sixon's opinions unsupported by the record. The court disagrees. As stated above, in giving little weight to

_____

[3] Blakley does not challenge the ALJ's decision to give great weight to Dr. Thompson's opinion.

10

Dr. Sixon's opinions, the ALJ discussed Dr. Sixon's treatment notes and other medical evidence in the record.  Although Blakley points to other evidence in the record that he argues is consistent with Dr. Sixon's opinion, an ALJ is required to provide good reasons for the weight given to a treating physician's opinion, not to "slavishly discuss" every relevant factor.  Diaz v. Colvin, 14-cv-13363-IT, 2016 WL 2992909, at *2 (D. Mass. Mar. 28, 2016); see Applebee v. Berryhill, 744 F. App'x 6 (1st Cir. 2018) ("While the record arguably could support a different conclusion, there is clearly substantial evidence to support the ALJ's findings.").  In this case, the ALJ's reasons are sufficient to meet the regulatory standard.

B.  Dr. Jaffe

The ALJ gave great weight to the March 2013 opinion of Dr. Jaffe, a state agency consultant who did not treat or examine Blakley but reviewed the evidence in the record.[4]  Dr. Jaffe opined that Blakley had functional limitations consistent with

---

[4] An ALJ weighs the opinions of state agency consultants using the same standard as is applied to other medical opinions. Ledoux v. Acting Comm'r, Soc. Sec. Admin., 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018).

those included in the ALJ's RFC assessment.[5]  The ALJ found that Dr. Jaffe's opinion was entitled to great weight because he supported his opinion with specific citations to the evidence of record and clinical findings, and his opinion was consistent with Blakley's reported activities of daily living.

Blakley contends that the ALJ erred in giving great weight to Dr. Jaffe's opinion.  Blakley argues that Dr. Jaffe's opinion does not provide supporting evidence for the ALJ's RFC assessment because it was based on a severe impairment of degenerative disc disease, which the ALJ found to be non-severe. He also contends that Dr. Jaffe's opinion was not based on the entire record.  The Commissioner argues that the ALJ properly relied on Dr. Jaffe's opinion.

### 1.  Diagnosis

As discussed above, the ALJ found at Step Two that Blakley had a severe impairment of chronic pain syndrome.  Blakley argues that the ALJ erred in relying on Dr. Jaffe's opinion because Dr. Jaffe opined that Blakley had degenerative disc disease, an impairment that the ALJ found to be non-severe.

---

[5] The ALJ's RFC assessment is slightly more restrictive than Dr. Jaffe's assessment, in that, unlike Dr. Jaffe's, the ALJ's assessment precludes Blakley from climbing ladders, ropes, and scaffolds.

Although Dr. Jaffe found that Blakley had a severe impairment which the ALJ found to be non-severe, that fact does not show that the ALJ erred in giving great weight to Dr. Jaffe's opinion as to Blakley's <u>functional limitations</u>. Blakley offers no support for his theory that an ALJ's different conclusion as to a claimant's severe impairment precludes his reliance on another portion of a medical opinion, and such a theory is contrary to caselaw. See, e.g., Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks—the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case—is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter."); <u>accord</u> Whitney v. Saul, 19-11095-JCB, 2019 WL 4072021, at *8 (D. Mass. Aug. 29, 2019) (An "ALJ is entitled to piece together the relevant medical facts from the findings of multiple physicians.").

Indeed, Dr. Sixon, whose opinion Blakley argues was entitled to great weight, also opined in 2013 that Blakley's symptoms were caused by his degenerative disc disease. <u>See</u> Admin. Rec. at 47. In April 2014, Dr. Sixon suggested that Blakley's symptoms and limitations may instead be due to chronic pain syndrome, rather than disc disease. <u>See</u> <u>id.</u> at 1043, 1046. Thus, Blakley asks the court to disregard Dr. Jaffe's opinion as

to Blakley's functional limitations but rely on Dr. Sixon's 2013 opinion, despite the fact that both were based on a diagnosis of degenerative disc disease. The court declines to do so, and Blakley has not shown that the difference in the underlying severe impairment undermines the ALJ's reliance on Dr. Jaffe's opinion.

### 2. Sufficiency of the Record

Blakley also argues that Dr. Jaffe's opinion lacks merit because the record was incomplete in March 2013 when Dr. Jaffe gave his opinion. An opinion from a state agency consultant that is based on a "significantly incomplete record" cannot be accorded "significant weight" or provide substantial evidence to support a residual functional capacity assessment. Alcantara v. Astrue, 257 F. App'x 19, 21 (1st Cir. 2007); Guyette v. Berryhill, 17-cv-486-LM, 2019 WL 1199395, at *3 (D.N.H. Mar. 14, 2019). The record is significantly incomplete if the evidence added after the consultant's review materially changed the basis for assessing the claimant's limitations. Alcantara, 257 F. App'x at 334. "The record remains materially unchanged where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment." Giandomenico v. U.S. Soc. Sec. Admin., 16-cv-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).

"The ALJ bears the burden of determining and explaining whether missing evidence is material to assessing the claimant's limitations." Avery v. Acting Comm'r, Soc. Sec. Admin., 17-cv-443-JD, 2018 WL 2376507, at *4 (D.N.H. May 24, 2018); see also Alcantara, 257 F. App'x at 334; Laberge v. Berryhill, 18-cv-257-JL, 2018 WL 6819328, at *8 (D.N.H. Dec. 28, 2018).  It is insufficient for the ALJ to simply state that the record was not materially changed.  Alcantara, 257 F. App'x at 334.  Instead, the ALJ must make the absence of change adequately clear. Giandomenico, 2017 WL 5484657, at *4.

Blakley cites Dr. Sixon's 2013 opinion and 2014 opinion, and the MRI imaging done in December 2013 as material medical evidence that post-dated Dr. Jaffe's opinion.  The ALJ acknowledged that additional medical evidence was added to the record after Dr. Jaffe's review.  She stated that the new evidence did not show any meaningful change or deterioration in Blakley's functioning because his clinical examinations remained the same throughout the period.

The ALJ then addressed the clinical examination notes in detail.  In doing so, the ALJ emphasized the contrast between Blakley's claimed pain and severe impairments and the clinical findings that did not support that level of impairment.  The ALJ also noted that while Dr. Sixon had initially relied on degenerative disc disease as shown in the MRI results as the

cause of Blakley's symptoms, in April 2014, Dr. Sixon indicated that chronic pain syndrome outweighed the clinical examination results and questioned whether Blakley's pain was due to Lyme disease rather than degenerative disc disease.[6]  Dr. Sixon's change in diagnostic focus decreases the materiality of the December 2013 MRI results for assessing his functional capacity.

The ALJ found that the more recent medical evidence did not show deterioration in functioning after Dr. Jaffe issued his opinion.  Blakley has not pointed to contrary evidence.  Blakley also has not shown that subsequent questions about the causes of Blakley's pain demonstrate deterioration in his ability to function.  Therefore, the ALJ adequately explained why the later evidence was not material to an assessment of Blakley's functional capacity.  As such, the ALJ did not err in relying on Dr. Jaffe's opinion despite the fact that additional evidence was added to the record after the opinion.

C.  Occupational Therapist Samson

The ALJ gave little weight to Samson's March 2014 opinion. Samson opined that Blakley could not lift any weight from floor to waist and could lift and carry five pounds at waist level or

---

[6] Dr. Sixon referred Blakley to Dr. Carr for Lyme disease testing, which was negative, but Dr. Carr nevertheless suspected Lyme disease or a Lyme disease infection as a cause of his pain.

higher.  He also opined that Blakley had a severe balance deficit, that he could sit, stand, and walk occasionally, that he would be absent from work more than four days per month, and that he could work only 20 hours per week.

The ALJ explained that Samson's opinion was based on Blakley's one-time functioning during an evaluation which was not consistent with his other activities or the objective findings in the record.  The ALJ also noted that Samson based his results on Blakley's own reports of pain, rather than on objective assessments, that he did not factor into the opinion the inappropriate "Waddell" signs,[7] and that he is not an acceptable medical source under the regulations.

Although Blakley disputes the ALJ's reasons, the record supports them.  Samson found mostly normal results during his physical examination but then found Blakley had very low functional ability based on Blakley's performance.  To the extent Blakley's functioning was impaired by balance problems, there is no evidence that his balance was affected by either degenerative disc disease or chronic pain syndrome.  Dr. Thompson, whose opinion the ALJ gave great weight and which

_____

[7] According to Samson, Blakley scored 2/5 on the Waddell's Inappropriate Symptom Questionnaire, which was indicative of inappropriate complaints.  Samson stated in a 2016 supplemental report that despite this score, Blakley's reports of pain and disability in March 2014 were fully reliable.

Blakley does not challenge, suggested that some of Blakley's functioning problems could be due to side effects from medications.

In summary, the ALJ considered the occupational therapist's opinion and explained why she gave it little weight. Her reasons are supported by the record. That is all that is necessary.

II. <u>Prior Decision</u>

Blakley also faults the ALJ for failing to consider the more restrictive residual functional capacity assessment done by another ALJ in the prior decision, which found that Blakley was limited to sedentary work. After Blakley sought judicial review, that decision was remanded to the Appeals Council which then directed that another ALJ review the case, hold another hearing, and issue a new decision, specifically addressing certain issues.

Blakley cites <u>Lord v. Apfel</u>, 114 F. Supp. 2d 3, 15-16 (D.N.H. 2000), in support of his argument that the ALJ was required to consider the residual functional capacity assessment done in the prior decision. Blakley is mistaken. The cited part of the decision in <u>Lord</u> addresses a medical opinion by Lord's treating physician, not a decision or a residual functional capacity assessment by an ALJ in a prior proceeding.

Therefore, <u>Lord</u> provides no support for Blakley's theory that the ALJ in this case was required to discuss the decision from a prior proceeding or the residual functional capacity assessment used in that decision, and the court perceives no error.

## CONCLUSION

For the foregoing reasons, the claimant's motion to reverse (document no. 9) is denied. The Commissioner's motion to affirm (document no. 13) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 25, 2019

cc:  Counsel of Record